[No. 32542. Department Two. September 4, 1953.]

*In the Matter of the Application for a Writ of Habeas Corpus of* CLAUDE L. JOHNSON, *Petitioner*, v. JOHN R. CRANOR, *as Superintendent of the State Penitentiary, Respondent.*[1]

[1] Reported in 260 P. (2d) 873.

*Claude L. Johnson, pro se.*

*The Attorney General* and *Cyrus A. Dimmick, Assistant,* for respondent.

FINLEY, J.—In his petition to this court for a writ of *habeas corpus,* Claude L. Johnson claims: That the attorney employed to defend him did not appear for the petitioner's trial in superior court; that petitioner's request for a continuance was refused; that he was offered the assistance of a young and inexperienced attorney by the court; that he reluctantly elected to defend himself when the continuance was refused. Petitioner further asserts that he asked the court to subpoena several witnesses; that subpoenas were issued; that, after the state presented its case, the trial was continued from the morning of April 18, 1949, until one p. m. of the same day; that the witnesses were not present nor available when court reconvened at one p. m.; that petitioner objected to proceeding without his witnesses; that the court waited until one-thirty p. m., and then proceeded with the trial; that thereupon petitioner was convicted and sentenced without the benefit of testimony from the requested witnesses. Petitioner claims that the subpoenas issued in his behalf were defective in that they commanded the witnesses to appear at ten a. m. on the following day, April 19, 1949, rather than at one p. m. on April 18th, and that his constitutional right to compel the attendance of the witnesses at his trial was thereby violated. Lastly, petitioner claims that the prosecuting attorney, in summing up the state's case, told the jury that petitioner "had a criminal record and was of a vicious nature;" that petitioner objected and asked for a mistrial; that the court merely stated he would instruct the jury on the matter and, subsequently, gave an instruction to the jury as follows:

"Under the law of the State, the fact that a defendant has previously been convicted of a crime is not of itself any evi-

dence of his guilt in this case. It is, however, a circumstance which may be weighed and considered by you in the determination of what weight or credibility should be allowed his testimony as a witness in this case."

As to the latter aspect of the matter, petitioner claims he did not take the stand, that his credibility was not in issue, and that the court's instruction was ineffectual to remove from the minds of the jurors prejudice resulting from the prosecutor's misconduct.

The only contention that has merit and may properly be considered by us on *habeas corpus* is petitioner's claim respecting the defect in the subpoenas (allegedly depriving him of the constitutional right to obtain witnesses and their testimony in defense of the charges against him). This appears to us to be of considerable significance. The office of the attorney general, in preparing and submitting a brief for the hearing on this *habeas corpus* petition, attached a photostatic copy of a document which appears to be a copy of a subpoena issued on the 18th of April, 1949, in cause No. 25193, King county (State v. Claude L. Johnson), commanding certain witnesses for the defendant to be present in court at ten a. m., on April 19, 1949. In the oral argument before us, assistant attorney general Cyrus Dimmick stated quite frankly that the subpoenas may have been defective, as claimed by petitioner. A photostatic copy of the allegedly defective subpoena is also submitted by petitioner along with his petition.

The record of this trial is not before us. It may be that the record or testimony of the prosecutor, or that of the trial judge, would provide an explanation of the matter relating to the subpoena which would be inconsistent with petitioner's present claims. In other words, the right to have process to compel the attendance of witnesses must be asserted and maintained. It can be, and might have been, waived by the petitioner.

If the petitioner's claim respecting the subpoenas is wholly true, we think he has good reason to complain that a right under our state constitution was denied him; Washington constitution—Art. I, § 22. Assuming petitioner

did not waive his right to compel the attendance of witnesses through the issuance and service of proper and effective subpoenas, we doubt that he would be entitled to be set free. But there is no doubt in our minds that he would be entitled to have the judgment vacated, the sentence set aside, and a new trial. We make this latter statement advisedly and for whatever assistance it may be to the trial court. The relief requested by petitioner is that he be released from confinement and set free. The granting of a new trial may be questioned by the petitioner on the ground that it would subject him to double jeopardy in violation of Art. I, § 9, of the state constitution. If so, we would disagree, fully realizing that *habeas corpus* rather than appeal is the procedure here involved.

In cases where, pursuant to an appeal, a new trial is granted, judicial reasoning negating any claim of double jeopardy is well established. It is said that double jeopardy assumes or requires a valid, legal conviction in the first instance; in other words, that without an initial valid conviction there can be no double jeopardy. Likewise, it is said that an accused waives the privilege to claim double jeopardy when he asserts the invalidity of his conviction, and thereby benefits by getting a new trial. In *Bryant v. United States*, 214 Fed. 51, a pertinent statement is found:

"The objection of double jeopardy for the same offense is made. It is well settled that it is not double jeopardy to resentence a prisoner who had his first sentence vacated by writ of error . . . [citing cases], nor to retry him on a new indictment after a prior indictment, conviction, and sentence have been set aside in a proceeding in error . . . [citing cases]. The principle of such cases is that a sentence that has been vacated by the action of a prisoner cannot then be put up by him as an obstacle to the further administration of justice; and we think it immaterial that his attack was collateral, as by habeas corpus, instead of direct, by appeal or writ of error. Here he was the actor, and the result left his conviction unimpaired."

Similarly, in *King v. United States*, 98 F. (2d) 291 (1938), we find a pertinent and persuasive comment, as follows:

"Until a convicted prisoner receives a sentence which can withstand attack, it may be conceived that his original jeopardy continues without interruption, and that he is therefore not put in jeopardy a second time when he receives his first valid sentence. Moreover, when he himself attacks the first sentence his later jeopardy is, in some sense, of his own choosing. A close parallel is the doctrine that when a *conviction* is reversed, the prisoner cannot complain if on a later conviction he is given a severer sentence. If a conviction and sentence to life imprisonment are reversed because of errors in a trial for murder, the prisoner may, on a subsequent conviction, be sentenced to death. *Stroud v. United States*, 251 U. S. 15, 18, 40 S. Ct. 50, 64 L. Ed. 103. The Court said in that case (page 51): 'The plaintiff in error himself invoked the action of the court which resulted in a further trial. In such cases he is not placed in second jeopardy within the meaning of the Constitution.' It can make no difference whether the error which avoids the first sentence goes to the conviction, as it did there, or to the sentence alone, as it does here."

The facts before us are not sufficient to permit us to dispose of this matter here. We believe this petition must be, and it is hereby, referred to the superior court for King county for a hearing to determine the facts, with particular reference to the subpoena question and for a disposition according to law, based upon the facts adduced at such hearing.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.